UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE INDEPENDENCE PROJECT, INC.,

                                        Plaintiff,

            v.

VENTRESCA BROS. CONSTRUCTION CO.,
INC.,

                                        Defendant.

No. 18-CV-2748 (KMK)

OPINION & ORDER

VENTRESCA BROS. CONSTRUCTION CO,
INC.,

                                        Third-Party Plaintiff,


            v.

LAWRENCE A. FULLER; LAWRENCE
FELTZIN; FULLER, FULLER &
ASSOCIATES, P.A.; and
BRAFF, HARRIS, SUKONECK & MALOOF,

                                        Third-Party Defendants.

Appearances:

Lawrence A. Fuller, Esq.
Fuller & Fuller & Associates
North Miami, FL
*Counsel for Plaintiff and Third-Party Defendant The Independence Project, Inc., and Third-Party Defendant Lawrence Feltzin,*

Keith Harris, Esq.
Braff Harris Sukoneck & Maloof
Livingston, NJ
*Counsel for Plaintiff and Third-Party Defendant The Independence Project, Inc.*

Steven B. Blau, Esq.
Shelly A. Leonard, Esq.
Blau Leonard Law Group
Huntington, NY
*Counsel for Defendant and Third-Party Plaintiff Ventresca Bros. Construction, Inc.*

Jill L. Zibkow, Esq.
Gallo Vitucci Klar LLP
New York, NY
*Counsel for Third-Party Defendants Lawrence A. Fuller, and Fuller, Fuller & Associates, P.A.*

KENNETH M. KARAS, District Judge:

The Independence Project, Inc. ("Plaintiff") brought this action against Defendant Ventresca Bros. Construction, Inc. ("Defendant" or "Third-Party Plaintiff"), on behalf of its member Lawrence Feltzin ("Feltzin"), alleging that Defendant owns and leases a venue that is not in compliance with the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Compl. (Dkt. No. 1).)  Defendant brought counterclaims against Feltzin and Plaintiff's attorneys, Lawrence A. Fuller, Esq. ("Fuller"), Fuller, Fuller, & Associates, P.A. ("Fuller Firm"), and Braff, Harris, Sukoneck, & Maloof ("Braff Firm") (collectively, "Third-Party Defendants"), alleging that the attorneys and Plaintiff intentionally misled the Court by asserting that Feltzin was a paraplegic.  (*See generally* Answer (Dkt. No. 22); Def.'s Third-Party Compl. ("Third-Party Compl.") (Dkt. No. 31).)  In an Order of Dismissal dated February 5, 2019, the Court, having been advised that all claims asserted had been settled, dismissed with prejudice Plaintiff's main Action and Defendant's Third-Party Action.  (*See* Order of Dismissal (Dkt. No. 72).)  Presently before the Court is Plaintiff's Motion for Attorneys' Fees and Costs pursuant to 42 U.S.C. § 12205.  ( *See generally* Pl.'s Application for Attys' Fees and Expert Fees and Incorporated Mem. of Law ("Pl.'s Mem.") (Dkt. No. 77).)  For the reasons stated herein, the Motion is granted as modified.

## I. Background

Plaintiff is a non-profit corporation, formed under the laws of New Jersey, whose members include individuals with disabilities. (Compl. ¶ 5.) The organization's purpose is to ensure that public accommodations are "accessible and usable by the disabled and that its members are not discriminated against because of their disabilities." (*Id.*) Defendant, a New York Corporation, owns and leases a strip mall, Mid Central Shopping Plaza, in Hartsdale, New York. (*Id.* ¶ 8.)

Feltzin, a resident of Florida, is a member of Plaintiff and is disabled, as defined by the ADA. (*Id.* ¶ 5.) He is a paraplegic and uses a wheelchair to ambulate. (*Id.* ¶ 5.) He frequently visits his family in Manhattan and travels to places of public accommodation in Westchester County. (*Id.* ¶ 6.) Feltzin travels to various public accommodations to confirm that they comply with the ADA. (*Id.* ¶ 7.) He often initiates lawsuits to bring about compliance. (*Id.*) Feltzin traveled to Defendant's property and observed several ADA violations. (*Id.* ¶ 9–10.) A preliminary inspection of the property showed that ADA violations existed in relation to parking and exterior accessibility, access to goods and services, restrooms, and maintenance. (*Id.* ¶ 11.) Plaintiff alleges that Defendant discriminated against Plaintiff's members by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, and accommodations of its place of public accommodation. (*Id.* ¶ 14.)[1]

---

[1] The alleged violations in the Complaint include, but are not limited to, inaccessible parking and exterior routes, inaccessible access to goods and services, and inaccessible restrooms. (Compl. ¶ 11.) Plaintiff alleges that the parking spaces at Mid-Central Shopping Plaza are not maintained, that the curb ramps providing access to stores are unsafe for wheelchair users, and that there is no accessible route to the adjacent street or sidewalk. (*See id.*) Plaintiff also alleges that stores within the shopping center fail to provide accessible dining tables or lowered portions at bars for those in wheelchairs, that payment counters are mounted improperly high, and that the entrances into the stores have abrupt, impermissible slopes. (*See id.*) Additionally, Plaintiff alleges that the restrooms in several stores have inaccessible water closets

On March 28, 2018, Plaintiff filed its Complaint against Defendant. (Compl.) On October 29, 2018, Defendant filed an Answer, denying that the facility was in violation of the ADA and advancing approximately 40 Affirmative Defenses. (*See generally* Answer.) On November 20, 2018, Defendant brought counterclaims alleging that Third-Party Defendants intentionally misled the Court by asserting that Feltzin was a paraplegic. (*See generally* Third-Party Compl.) The Fuller Firm is a Florida corporation, and the Braff Firm is a New Jersey corporation. (Third-Party Compl. ¶¶ 14, 17.) Defendant accused Plaintiff of engaging in an intentional and systematic scheme to extort monetary settlements from small business owners under circumstances wherein the alleged ADA violations are frivolous and without legal or factual basis. (*Id.* ¶ 54.)

The parties settled the case and the Court dismissed the Action on February 5, 2019. (Order of Dismissal.) In the Settlement Agreement, the Parties denied any liability arising out of the Complaint and Third-Party Complaint. (Settlement Agreement ¶ 4 (Dkt. No. 75-1).) The Settlement mandated that "[a]ll alleged violations requiring alterations and/or modifications, as described in the Complaint . . . shall be completed prior to the inspection date [of September 30, 2019.]" (*Id.* ¶¶ 9, 11.) The Agreement also provided that "within seven . . . days of the execution of this Agreement, the parties will file a Stipulation of Dismissal . . . which shall state that the dismissal is subject to the Court retaining jurisdiction to enforce, as necessary, the terms of the Settlement Agreement . . . ." (*Id.* ¶ 12.) Additionally, the Agreement provided that "the Court shall retain jurisdiction to enforce, as necessary, the terms of this Settlement [], and to

---

which lack proper controls and wheelchair maneuvering space, that the restrooms have dispensers beyond the reach of wheelchair users, that the lavatories lack knee clearance, that the restrooms contain improper centerlines for the water closets and flush controls mounted on the wall side, and that the round door knobs on the restrooms impede use. (*See id.*)

determine the amount of attorneys' fees, costs, and expert fees." (*Id.* ¶ 14.)  The Court did not

play any role in the resolution of the suit and did not oversee any settlement conferences.  (Def.'s

Mem. in Opp. to Pl.'s Mot. for Attys' Fees ("Def.'s Mem.") at 2 (Dkt. No. 78).)  On February

26, 2019, the Court entered an Order approving the Settlement Agreement.  (Court's

Endorsement of Settlement ("So-Ordered Settlement") (Dkt. No. 76).)  On March 1, 2019,

Plaintiff filed the instant Motion and supporting papers, seeking attorneys' fees and associated

costs of $32,520 pursuant to 42 U.S.C. § 12205.  (*See* Pl.'s Mem. 3, 20.)  On March 25, 2019,

Defendant filed its opposition papers.  (Def.'s Mem.)

## II.  Discussion

Defendant opposes Plaintiff's Motion on the grounds that (1) Plaintiff was not a

prevailing party, and (2) even if considered the prevailing party, Plaintiff's account of fees

includes inflated billed hours that were "excessive, redundant, or otherwise unnecessary."

(Def.'s Mem. 16–17.)

### A.  Prevailing Party

"Before deciding whether an award of attorney's fees is appropriate in a given case, . . . a

court must determine whether the party seeking fees has prevailed in the litigation."  *CRST Van*

*Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) (citation omitted).  For a plaintiff to

recover attorneys' fees under 42 U.S.C. § 12205, it must be the prevailing party.  *See*

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600

(2001).  To be considered a prevailing party, the plaintiff must achieve a material, judicially-

sanctioned alteration of the legal relationship that favors it.  *See Perez v. Westchester Cty. Dep't*

*of Corr.*, 587 F.3d 143, 149 (2d Cir. 2009).  The material alteration of the legal relationship of

the parties must be more than just a catalyst bringing about voluntary change; the change must be

awarded by the court.  *See Buckhannon*, 535 U.S. at 598–99 (holding that "a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change"); *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 157–58 (2d Cir. 2001) (noting that although a "lawsuit sometimes produces voluntary action by the defendant", "[f]or a plaintiff to be considered a prevailing party . . ., the plaintiff's lawsuit must be a catalytic, necessary, or substantial factor in attaining the relief" (citations and quotation marks omitted)).

Courts in the Second Circuit ask whether a party has prevailed based on the "materiality of a judicial outcome" and "whether the result is purely procedural or whether it actually accomplishes something substantive for the winning party."  *Preservation Coal. of Erie Cty. v. Fed. Transit Admin.*, 356 F.3d 444, 451–52 (2d Cir. 2004) (citation omitted).  A plaintiff who achieves relief as a result of a settlement may be considered a prevailing party if the relief obtained was the same general type as the relief sought.  *See Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104 (2d Cir. 1991).  "Under the ADA, consent decrees may serve as the basis for an award of attorney's fees.  Although consent decrees do not always contain an admission of liability, they nonetheless effectuate a change in the legal relationship of the parties . . . '[and therefore] create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.'"  *Lazarus v. County of Sullivan*, 269 F. Supp. 2d 419, 421 (S.D.N.Y. 2003) (citing *Buckhannon*, 532 U.S. at 604) (italics omitted).

When a district court retains jurisdiction over the enforcement of a settlement agreement, "the situation is 'not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees.'"  *Brown v. Green 317 Madison, LLC*,

No. 11-CV-4466, 2014 WL 1237448, at *3 (E.D.N.Y. Feb. 4, 2014) (quoting *Roberson v. Giuliani*, 346 F.3d 75, 82 (2d Cir. 2003)), *adopted by* 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014); *see also Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees.").  A court's decision that an "[a]greement received sufficient judicial sanction to justify considering plaintiffs prevailing parties is strengthened" if it has a "clause . . . conditioning its effectiveness on the district court's retention of jurisdiction."  *Roberson*, 346 F.3d at 82.

In *Kokkonen v. Guardian Life Insurance Company of America*, the Supreme Court observed that where "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order[,]" "a breach of the agreement would be a violation of the order" and the presiding court would have ancillary jurisdiction to enforce the agreement."  511 U.S. 375, 381 (1994); *see also Roberson*, 346 F.3d at 82 (holding that "the district court's retention of jurisdiction in this case is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees").  When a district court retain[s] jurisdiction, it "necessarily ma[kes] compliance with the terms of the agreement a part of its order so that 'a breach of the agreement would be a violation of the order.'"  *Roberson*, 346 F.3d at 82 (quoting *Kokkonen*, 511 U.S. at 381).  "[B]ecause the court has the general responsibility to ensure that its orders are fair and lawful, it retains some responsibility over the terms of a settlement agreement as the parties' obligation to comply with the agreement was made a part of its order."  *Id.*

The Second Circuit has held that settlement agreements have judicial imprimatur in at least two sets of circumstances. First, in *Roberson*, the Second Circuit held that a settlement agreement had sufficient judicial imprimatur where the order of dismissal stated that the court retained jurisdiction over a settlement agreement without otherwise referencing its terms. *See* 346 F.3d at 78, 82. There, the plaintiffs challenged the City of New York's policies regarding "the disposition of applications for food stamps, Medicaid and public assistance benefits." *Id.* at 77. The settlement agreement mandated that the City would make various changes in the way that future benefits would be handled. *See id.* at 77–78. The plaintiffs submitted an order dismissing their claims, which provided that "th[e] [c]ourt shall retain jurisdiction over the settlement agreement for enforcement purposes." *Id.* at 78. The Second Circuit concluded that the plaintiff was the prevailing party and was awarded attorneys' fees. *See id.* at 82–84. Second, in *Perez*, the Second Circuit held that a settlement had sufficient judicial imprimatur where the order of dismissal explicitly incorporated the terms of a settlement. *See Perez*, 587 F.3d at 150. There, the plaintiffs challenged Westchester County's practice of denying Halal meals to inmates at the Westchester County Jail. *Id.* at 144. The parties entered into settlement negotiations, which were supervised by a judge. *Id.* at 144, 147. The parties reached a settlement requiring the County to serve Halal meals with the same frequency as it served Kosher meals and instituting a new, ten-part procedure which was "an express condition of the dismissal of the lawsuits." *Id.* at 150. The order of dismissal "explicitly incorporate[d] the terms of the settlement." *Id.* at 152; *see also Brown*, 2014 WL 1237448, at *4 (holding that there was sufficient judicial imprimatur over a settlement agreement where the parties' obligation to comply with the terms of the settlement was explicitly made part of the court's dismissal); *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, No. 06-CV-5487, 2008 WL 4453221, at *4

(E.D.N.Y. Sept. 30, 2008) (holding that a settlement agreement with a provision that the court retain jurisdiction had sufficient judicial imprimatur).[2]

Here, Plaintiff is the prevailing party because the Court retained jurisdiction "to enforce, as necessary, the terms of the Settlement Agreement, and the determination of the amount of attorneys' fees, costs, and expert fees." (Settlement Agreement ¶ 14.) Moreover, the Court so-ordered the Settlement Agreement, which required the Defendant to change its premises. (*See* So-Ordered Settlement.) The Settlement Agreement specifies that "all alleged violations requiring alterations and/or modifications, as described in the Complaint, if not already discharged [or] performed, shall be completed . . . ." (Settlement Agreement ¶ 9.) Defendant must complete the alterations and modifications, if any, to be in accordance with the Court's Order. This makes Plaintiff a prevailing party here. *See 135 W. Sunrise Realty Corp.*, 2008 WL 4453221, at *4 (finding plaintiff was prevailing party where the court retained jurisdiction to enforce the terms of a settlement agreement requiring defendant to make physical modifications to the premises to ensure compliance with the ADA); *Access 4 All, Inc. v. Grandview Hotel Ltd. P'ship*, No. 04-CV-4368, 2006 WL 566101, at *3 (E.D.N.Y. Mar. 3, 2006) (finding plaintiff was

---

[2] Defendant argues that the Order of Dismissal in this case did not incorporate the terms of the Settlement Agreement and that the Court therefore has not placed its judicial imprimatur on the Agreement. (Def.'s Mem. 12.) The Court "so-ordered" the Settlement Agreement, which specified that Plaintiff's lawsuit would be dismissed "upon the terms and conditions hereinafter set forth." (So-Ordered Settlement; Settlement Agreement ¶ 6.) So-Ordered settlements have sufficient judicial imprimatur because in the event of a breach of the settlement, the court would have jurisdiction to enforce the provisions of the Settlement, just as if the Settlement had been explicitly incorporated. *See Brown*, 2014 WL 1237448, at *4 (finding that a settlement that was "so-ordered" had judicial imprimatur because the court retained jurisdiction to enforce the agreement). Defendant also incorrectly states that Plaintiff cannot be a prevailing party on the mistaken notion that the case was dismissed without prejudice. (Def.'s Mem. 9–10.) The case was dismissed without prejudice only to the extent that a party "reopen[s] the action within thirty days of the date of the [Order of Dismissal] if the settlement is not consummated," which did not occur here. (*See* Order of Dismissal.)

prevailing party where court retained jurisdiction to enforce the terms of a consent decree requiring defendant to make substantial modifications to its property to comply with the ADA); *Access 4 All, Inc. v. Hi 57 Hotel, LLC*, No. 04-CV-6620, 2006 WL 196969, at *2 (S.D.N.Y. Jan. 26, 2006) (finding plaintiff was prevailing party where the court retained jurisdiction to enforce the terms of the settlement agreement, which required defendant to modify certain barriers on its premises to comply with the ADA).[3]

### B. Reasonableness of Attorneys' Fees

Plaintiff requests $28,250 in attorneys' fees, for 66.20 hours of Fuller's time at $425 per hour, and one hour of paralegal work at $100 per hour. (Pl.'s Mem., Ex. A ("Fuller Bill"), at 3 (Dkt. No. 77-1).) Plaintiff also seeks $4,270 in costs, including a $3,500 expert fee and $770 in litigation expenses. (*Id.*) Plaintiff seeks an additional $750 re-inspection fee. (Pl.'s Mem. 17.) Plaintiff thus seeks a total of $32,520 in attorneys' fees, costs, and expert fees. (Fuller Bill 3.) Defendant argues that the fee rate Fuller requests is excessive, that the number of "the hours

---

[3] Plaintiff here is admittedly not a prevailing party under the standard set out in *Perez*, because the Court was not involved in settlement negotiations, and the Order of Dismissal did not explicitly incorporate the terms of the Settlement Agreement. However, merely because the Court did not engage in the settlement discussions does not render the dismissal and Settlement Agreement without judicial imprimatur, because the Court retained jurisdiction to enforce the Agreement. (Settlement Agreement ¶ 12 ("the dismissal is subject to the Court retaining jurisdiction to enforce, as necessary, the terms of the Settlement Agreement . . . . ") *See Kokkonen*, 511 U.S. at 381 (finding plaintiff was a prevailing party because the court retained jurisdiction to enforce the settlement, even though the Court was not involved in the settlement process); *Roberson*, 346 F.3d at 82 (finding plaintiff was a prevailing party because the court retained jurisdiction to enforce the settlement despite the district court's statements that it had not specifically reviewed or approved the terms of the settlement); *Ng v. King Henry Realty, Inc.*, No. 16-CV-13, 2016 WL 6084074, at *2 (S.D.N.Y. Oct. 7, 2016) (finding that a private settlement agreement, reached without the court's involvement, had judicial imprimatur where the court retained jurisdiction to enforce its terms); *Brown*, 2014 WL 1237448, at *4 (finding that a so-ordered settlement had judicial imprimatur where the Court was not involved in settlement negotiations).

billed were excessive, redundant, or otherwise unnecessary and should be reduced," and therefore seeks an across-the-board fee reduction of 75%. (Def.'s Mem. 20.)[4] As for costs, Defendant argues that the expert report is speculative and problematic, and even suggests the expert may never have been on the premises. (Def.'s Mem. 24–25.)

A district court has "considerable discretion" in determining what constitutes a reasonable fee award. *De La Cruz Moreno v. Happy Angel Nail Spa Inc.*, No. 15-CV-10078, 2019 WL 2438966, at *10 (S.D.N.Y. June 12, 2019) (citations omitted). "A district court calculates the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly billing rate." *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 172 (S.D.N.Y. 2018) (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). "The court is to exclude 'excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims.'" *Id.* at 172–73 (quoting *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)); *see also Palmer v. County of Nassau*, 977 F. Supp. 2d 161, 170 (E.D.N.Y. 2013) (noting that courts are to exclude requested hours that are "excessive, redundant[,] or otherwise unnecessary" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))). The party seeking attorneys' fees "bear[s] the burden of

---

[4] "Paralegal services are includable in an award of attorneys' fees, and the reasonableness of paralegal fees [is] determined by reference to the prevailing hourly rate in the relevant community." *H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc.*, No. 13-CV-4441, 2018 WL 4017698, at *2 (S.D.N.Y. July 25, 2018) (citations omitted). Recent cases in this District suggest that the prevailing rate for paralegals is between $100 and $200 per hour. *See Gesualdi v. Interstate Payroll Co.*, No. 14-CV-6780, 2019 WL 109379, at *8 (E.D.N.Y. Jan. 4, 2019) (approving $110 per hour for paralegal time); *Swartz v. HCIN Water St. Assocs., LLC*, No. 17-CV-4187, 2018 WL 5629903, at *5 (S.D.N.Y. Oct. 31, 2018) (awarding $115 per hour for paralegal fees); *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13-CV-1873, 2014 WL 1399417, at *7–8 (E.D.N.Y. Apr. 10, 2014) (awarding $110 per hour for paralegal time). Here, Defendant does not contest the amount billed for paralegal work and the Court therefore does not consider reducing Plaintiff's Attorneys' fees with respect to amount billed.

documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (citations and quotation marks omitted); *see also Hensley*, 461 U.S. at 433 (explaining that the fee applicant must submit "evidence supporting the hours worked and rates claimed").

### 1. Reasonable Rate

The "presumptively reasonable fee" is "the lodestar"—"the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Beastie Boys*, 112 F. Supp. 3d at 48. "Attorney's fees must be reasonable in terms of the circumstances of the particular case . . . ." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). A reasonable hourly rate is based on "the [current] prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012) (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also McDonald ex rel. Prendergast v. Pension Plan of the NYSAILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (explaining that a reasonable hourly rate is one in line with rates "prevailing . . . in the community for similar services by lawyers of reasonably comparable skill, expertise[,] and reputation" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984))). A "presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and quotation marks omitted). In resolving what a reasonable client would pay, the Court must consider:

> [1] the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time

limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3

(2d Cir. 2008) (citation omitted).

The "results obtained" factor is the weightiest. *Harty v. Par Builders, Inc.*, No. 12-CV-2246, 2016 WL 616397, at *2 (S.D.N.Y. Feb. 16, 2016) ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees . . . is the degree of success obtained by the plaintiff" (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008))). "[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee." *Texas State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (italics omitted). "Both the quantity and quality of the relief obtained, as compared to what the plaintiff sought to achieve as evidenced in [the] complaint, are key factors in determining the degree of success achieved." *Barfield*, 537 F.3d at 152 (citation and quotation marks omitted). Defendant argues that Plaintiff did not achieve a victory because of "Plaintiff['s] counsel's total failure to achieve a degree of overall success." (Def.'s Mem. 20.) However, the Settlement expressly requires Defendant to remedy "[a]ll alleged violations requiring alterations and/or modifications, as described in the Complaint . . . ." (Settlement Agreement ¶ 9.) The Court finds that Plaintiff has achieved a high degree of success because Defendant must correct all of the alleged violations Plaintiff included in its Complaint. *See Swartz v. HCIN Water Street Assocs.*, No. 17-CV-4187, 2018 WL 5629903, at *4 (S.D.N.Y. Oct. 31, 2018) (finding that ADA plaintiff achieved success in light of parties reaching a settlement that required defendant to undertake "substantial corrective action" to the alleged ADA violations); *Harty*, 2016 WL 616397, at *3 (finding that

the fact that defendant agreed to a settlement with plaintiff in an ADA case is indicative of the plaintiff "achiev[ing] success in this matter").

Next, the Court considers the experience, reputation, and ability of Plaintiff's attorney. Defendant does not contest Fuller's experience but cites other cases in which Fuller's fees have been reduced and argues that the reductions in other cases warrant an across-the-board reduction in this case. (Def.'s Mem. at 19.) Plaintiff justifies its request for an hourly rate of $425 by citing Fuller's vast experience with civil rights law and ADA cases. (Pl.'s Mem. 11–12.) Fuller has been a member of the Florida Bar since 1974 and a member of the bar of the Southern District of New York since 2004. (*See* Pl.'s Mem., Ex. B (Resume of Lawrence A. Fuller) ("Fuller Resume") (Dkt. No. 77-2).) Fuller has been practicing law for over 40 years, (*see id*.), and has litigated many ADA cases. *See Hi 57 Hotel, LLC*, 2006 WL 196969, at *3 (noting that Mr. Fuller's firm, Fuller, Fuller, & Associates, represented the plaintiff in that case in at least 92 ADA actions within the prior two years); *see also Swartz*, 2018 WL 5629903, at *4 (finding that Fuller's experience and resume supported an award of an hourly rate near the top of the range). Fuller's substantial experience litigating ADA cases is relevant to a determination of his reasonable rate because an experienced attorney may be able to complete tasks in a more efficient and less time-consuming manner. *See Blum*, 465 U.S. at 898 (noting that an experienced attorney would be expected to complete a complex legal tasks more quickly than an attorney with less experience); *Swartz*, 2018 WL 5629903, at *4 (noting that "[t]he simplicity of a case may be enhanced, and the fee properly reduced, when the case is litigated by an attorney who has substantial experience in litigating similar cases"); *Spalluto v. Trump Inter. Hotel & Tower*, No. 04-CV-7497, 2008 WL 4525372, at *13 (S.D.N.Y. Oct. 2, 2008) (observing that the issues were simple in light of the Fuller firm's experience litigating dozens of similar ADA cases

involving identical legal issue and similar factual issues).  The fact that Fuller is experienced weighs in favor of reducing his fees.

Plaintiff contends that litigating Title III ADA Claims is complex and novel because there are "few firms nationwide" that litigate these type of claims that require technical specialized knowledge, and that accordingly a fee reduction is not appropriate in this case.  (*See* Pl.'s Mem. 11–12.)  Defendant argues that there are no complex or novel issues in this case, that "the Fuller firm has a mass production line of hundreds of these cases," and that an across-the-board fee reduction is warranted.  (Def.'s Mem. 21.)  Courts interpret the term "novel and complex" as pertaining to cases involving areas of unsettled law or issues of first impression. *See, e.g.*, *Div. 1181 Amalgamated Transit Union– N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 626–27 (E.D.N.Y. 2017) (holding that ERISA case brought by pension fund and trustees against employer did not involve complex and unsettled legal issues and accordingly applying an across the board fee reduction); *Mary Jo. C. v. Dinapoli*, No. 09-CV-5635, 2014 WL 7334863, *6–7 (E.D.N.Y. Dec. 18, 2014) (holding that an ADA case involving only one "claim by a single plaintiff" against a government entity was "not particularly complex"); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 537, 546 (S.D.N.Y. 2008) (finding a case was not complex because it did not involve "multiple parties, class allegations, unique claims, or other characteristics").  The Court agrees with Defendant that this case does not involve complex or novel legal issues, especially in light of Fuller's vast experience litigating cases similar to this one, and even cases involving the same Plaintiff.  (*See* Pl.'s Mem. 16.)

Other judges within this District have found the customary rate for experienced litigators ranges from about $400 to $600 per hour in civil rights and ADA cases.  *See, e.g.*, *Alicea v. City of New York*, 272 F. Supp. 3d 603, 609–10 (S.D.N.Y. 2017) (holding that hourly rate of $625

"while at the high end, [i]s reasonable" for prevailing plaintiff's trial counsel in a civil rights case, but reducing another partner's hourly fee to $550 where the partner did not participate at trial); *Dancy v. McGinley*, 141 F. Supp. 3d 231, 238 (S.D.N.Y. 2015) ("While it seems clear that, for experienced attorneys, hourly rates of $300-400 are unremarkable in civil rights cases in the Southern District, some courts find that awards exceeding $400 per hour are only warranted in unusually difficult and complex cases" (citation, alteration, and quotation marks omitted)); *Shabazz v. City of New York*, No. 16-CV-6417, 2015 WL 7779267, at *3 (S.D.N.Y. Dec. 2, 2015) (finding $350 per hour to be a reasonable rate for an attorney with approximately five years of civil rights litigation experience and noting that "[c]ourts in this district have generally determined that the range of appropriate fees for experienced civil litigators is between $350 and $450 per hour"); *Munoz v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (finding $400 per hour to be a reasonable rate for an experienced litigator with nearly 20 years of experience in an ADA case), *aff'd*, 607 F. App'x 85 (2d Cir. 2015).

Because Fuller has a history of litigating cases in the Southern District, the rates that courts have previously awarded him are instructive. In nearly identical ADA cases litigated between 2005 and 2018 in the Southern District, Fuller has been awarded rates between $350 and $400. *See Swartz*, 2018 WL 5629903, at *4 (awarding $400 per hour in attorneys' fees for a "garden-variety" ADA case, where the parties reached a settlement requiring defendant to make substantial corrections to architectural barriers at its hotel); *Access 4 All, Inc. v. Mid-Manhattan Hotel Assocs.*, No. 13-CV-7995, 2014 WL 3767009, at *2 (S.D.N.Y. July 31, 2014) (awarding $375 per hour in attorney's fees in a similar ADA hotel case); *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592, 2013 WL 3965247, at *2 (S.D.N.Y. July 31, 2013) (noting that the

customary rate was $350 to $375 for experienced litigators representing clients in ADA matters five to eight years prior to this case, but awarding a $400 hourly rate to account for "ordinary inflation"), *aff'd*, 731 F.3d 184 (2d Cir. 2013); *Spalluto*, 2008 WL 4525372, at *13 (awarding $375 per hour in attorney's fees for an ADA case because the case involved identical legal issues and similar factual issues as many cases that Fuller had litigated); *Hi 57 Hotel, LLC*, 2006 WL 196969, at *3 (awarding $350 per hour in attorney's fees in a similar ADA hotel case); *Access 4 All, Inc. v. Park Lane Hotel*, No. 04-CV-7174, 2005 WL 3338555, at *5 (S.D.N.Y. Dec 7, 2005) (awarding $350 per hour in attorney's fees in a similar ADA hotel case). Accordingly, taking into account all relevant considerations and inflation, the Court awards Plaintiff attorneys' fees for Fuller's work at the reasonable hourly rate of $400.

### 2. Reasonable Hours

Defendant asserts that the hours billed by Fuller are unreasonable and excessive because certain entries are vague or contain block billing, and certain entries are duplicative. (*See* Def.'s Mem. 20.) Defendant also argues that Fuller has not made any representation that a good faith effort was made to exclude hours that are "excessive, redundant, or otherwise unnecessary." (*Id.* at 22.)

### a. Work Not Filed

Defendant lists several examples of hours billed by Fuller for work on motions or submissions that were never filed, including 14.30 hours spent working on the Motion to Strike or Dismiss, the Response to the Third-Party Complaint, and the revisions to the proposed Motion to Dismiss. (*See generally* Fuller Bill.)[5] Defendant is correct that courts may disallow billing for

---

[5] The hours billed for working on submissions ultimately not filed include: November 5, 2018 billing for 6.60 hours for preparing a Motion to Strike or Dismiss, which was never served or filed; December 28, 2018 billing for 5.80 hours preparing a response to the Third-Party

hours spent working on submissions that were never filed.  *See, e.g.*, *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998) (affirming district court's refusal to award attorneys' fees "for some 35 hours spent preparing for motions that were never filed"); *Mondragon v. Keff*, No. 15-CV-2529, 2019 WL 2551536, at *13 (S.D.N.Y. May 31, 2019) (disallowing hours spent researching and drafting a motion that was never filed in that action), *adopted by* 2019 WL 2544666 (S.D.N.Y. June 20, 2019); *Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586, 2017 WL 1215004, at *13 (S.D.N.Y. Mar. 31, 2017) (deducting hours billed for a motion that was never filed), *adopted by* 2017 WL 4350567 (S.D.N.Y. June 28, 2017), *aff'd*, 719 F. App'x 90 (2d Cir. 2018); *Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09-CV-975, 2010 WL 3911261, at *5 (S.D.N.Y Sept. 1, 2010) (disallowing hours spent on a motion that lacked a factual or legal basis), *adopted by* 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); *Rozell*, 576 F. Supp. 2d at 538 (noting that "counsel may be denied compensation for work done on motions that were never filed" and collecting cases); *Smart SMR of N.Y., Inc. v. Zoning Comm'n of Town of Stratford*, 9 F. Supp. 2d 143, 152 (D. Conn. 1998) (declining to award fees for default judgment that was never filed and unnecessary)).  Accordingly, the Court excludes the 14.30 hours Fuller spent working on submissions that were never filed.

### b.  Block Billing

Defendant also argues that Fuller improperly relied on block billing practices that make it difficult for the Court to assess reasonableness.  (Def.'s Mem. 20.)  Although it is "unnecessary for [fee applicants] to identify with precision the amount of hours allocated to each individual task," *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198, 2009 WL 72441, at *7

---

Complaint, which was never served or filed; January 8, 2019 billing for 1.90 hours for revisions to the proposed Motion to Dismiss, which was never served or filed.  (Fuller Bill 2–3.)

(S.D.N.Y. Jan. 7, 2009), attorneys seeking reimbursement "must provide enough information for the [c]ourt, and the adversary, to assess the reasonableness of the hours worked on each discrete project," *Themis Capital v. Democratic Republic of Congo*, No. 09-CV-1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014), *reconsideration denied*, 2014 WL 4693680 (S.D.N.Y. Sept. 22, 2014). Although courts disfavor block billing in general, it "is most problematic where large amounts of time (e.g., five hours or more) are block billed," thereby "meaningfully cloud[ing] a reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys*, 112 F. Supp. 3d at 53 (citation and italics omitted).

Here, the block-billed entries are broken down into notations of the amount of time spent on each item. (*See* Fuller Bill.)[6] The billing statement in this case did not "render[] it difficult to determine the actual time spent on a specific activity." *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, No. 76-CV-2125, 2007 WL 486610, at *5 (S.D.N.Y. February 14, 2007); *see also U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12-CV-275, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) (finding "[t]he use of 'block billing' . . . perfectly reasonable" where "the specific tasks in each 'block' are described with sufficient detail and clarity to confirm the reasonableness of the work performed" (citation omitted)); *Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 3866090, at *6 (S.D.N.Y. Aug. 6, 2014) (declining to reduce fees based on block billing where the "entries [were] sufficiently detailed to

---

[6] For example, on December 27, 2019, Fuller billed 3.00 hours for "Preparing final draft of proposed Amended Complaint (1.0); Preparing Motion for Leave to Amend Complaint and Memorandum of Law (1.4); Phone call(s) with opposing counsel (.1); Reviewing Defendant's Rule 26(a)(1) Disclosure (.5)." (Fuller Bill.) Another example is the entry dated January 4, 2019, where Fuller billed 1.90 hours for "Phone call(s) with Ms. Zibkow (.2); Reviewing proposed letter from Ms. Zibkow to opposing counsel requested 3rd Party to withdraw summons and complaint (.7); Reviewing proposed letter from Ms. Zibkow to Judge requesting permission to file Motion to Dismiss (1.0)." (*Id.*) The time specifications allow the Court to determine how much time was spent on each item in the block. (*Id.*)

convey to the reader the tasks for which [the attorneys] billed"). Because the "commingling of

activities within one time entry" does not "impede[] the [C]ourt's efforts to evaluate the

reasonableness of any of the listed activities," *Berry v. Deutsche Bank Tr. Co. Am.*, 632 F. Supp.

2d 300, 306 (S.D.N.Y. 2009) (citation and quotation marks omitted), the use of block billing here

does not provide a basis for reducing the fee award here.

### c. Aggregate Hour Reduction for Vague and Excessive Entries

Defendant argues that Fuller has "developed and repeatedly used the same templates,"

and has therefore "unreasonably inflated billable hours in connection with the use of these boiler

plate forms." (Def.'s Mem. 20.) Defendant identifies certain entries that it claims are

"egregious," including,

> 6.40 hours to review the Answer to the Complaint and Third-Party Complaint;
> []1.20 hours to prepare for a telephonic Rule 16 Conference; [] 1.90 hours to
> prepare an Amended Complaint which essentially added the name and profile of
> Ronald Moore, to paragraphs 8 and 9; [] 2.40 hours to review Defendant's
> Interrogatories and Document Requests; [] 2.50 hours for legal research into
> reasonable hourly rate.

(Def.'s Mem. 23–24.) Defendant claims that "these amounts are clearly outside of the range for

similar matters litigated by counsel of similar experience in the district." (*Id*. at 24.)

"[A] district court is not required to set forth item-by-item findings concerning what may

be countless objections to individual billing items[.]" *Division 1181 Amalgamated Transit*

*Union*, 270 F. Supp. 3d at 624 (ultimately quoting *Lunday v. City of Albany*, 42 F.3d 131, 134

(2d Cir. 1994)); *see Anello v. Anderson*, 191 F. Supp. 3d 262, 283 (W.D.N.Y. 2016) ("[T]he

district court is not obligated to undertake a line-by-line review of [an] extensive fee application.

. . . In that regard, [a] court has discretion to impose an across-the-board reduction [in hours] if

an attorney has billed excessive, redundant, or unnecessary hours" (citations omitted)); *Black v.*

*Nunwood, Inc.*, No. 13-CV-7207, 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015) ("[T]he

court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application" (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998))).  Regarding vague entries, some specificity is required in time entries to enable the court to determine whether a reasonable amount of time was spent on each activity.  *See Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313–14 (S.D.N.Y. 2009) (finding entries such as "letter to [party]," "telephone call to [party]," and "discussion with [party]" to be overly vague); *Rosso v. Pi Mgmt. Assocs.*, No. 02-CV-1702, 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (finding entries such as "[r]eview of documents," which prevented the court from determining "whether the attorney who performed the work spent his or her time effectively" to be vague); *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65–66 (N.D.N.Y. 1998) (finding entries such as "review research," "review deposition transcripts," and "prepare deposition questions" to be overly vague).  In this case, there are vague entries throughout the time records, such as "phone call(s) with opposing counsel," and "preparing letter to co-counsel."  (Fuller Bill.)  *See Spalluto*, 2008 WL 4525372, at *8 ("[C]ursory descriptions, such as . . . 'prepare correspondence to co-counsel,' . . . and 'prepare letter to court' are too vague.").  Regarding excessive entries, Defendant cites *Mid-Manhattan Hotel*, wherein the Court found it was excessive for Fuller to bill ".30 hours to review a six line email."  *Mid-Manhattan Hotel*, 2014 WL 3767009, at *3.  Here, Fuller billed .60 hours for the preparation of a seven sentence letter.  (*See* Fuller Bill 1; Dkt. No. 46 (December 7, 2018 Letter to Judge Karas).)  In *Mid-Manhattan Hotel*, the Court found it was excessive for Fuller to bill ".50 hours to review a basic one and a half page Stipulation and Order" and ".30 hours to review a one page paragraph."  *Mid-Manhattan Hotel*, 2014 WL 3767009, at *3.  Here, Fuller billed .50 hours to review a one-page letter motion for conference.  (*See* Fuller Bill 2; *see also* Letter Motion for Conference

Dated January 9, 2019 (Dkt. No. 60).)  Additionally, Fuller billed 3.50 hours reviewing an incorrectly-filed 20-page third-party complaint that refers to plaintiffs in a different case.  (*See* Fuller Bill 1; First-Filed Third-Party Complaint ("Incorrect Third-Party Complaint") (Dkt. No. 30).)

To account for these vague and excessive entries and considering that this Court has the "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from [Plaintiff's] fee application," *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016) (citation omitted), the Court finds that a 15% across-the-board reduction in the total hours claimed is warranted here.  *See Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *8–9 (S.D.N.Y. June 20, 2016) (applying a 15% reduction in the total number of hours to redress any improper or excessive billing); *Clarke v. Hudson Valley Fed. Credit Union*, No. 14-CV-5291, 2016 WL 884667, at *8 (S.D.N.Y. Mar. 8, 2016) (applying 15% reduction to eliminate "excessive and unnecessary work performed"); *Mid-Manhattan Hotel*, 2014 WL 3767009, at *3 (reducing Fuller's total number of requested hours by 15% because of excessive billing); *Abeyta v. City of New York*, No. 12-CV-5623, 2014 WL 929838, at *5 (S.D.N.Y. March 7, 2014) (decreasing number of hours sought by 10% for vague entries), *aff'd*, 588 F. App'x 24 (2d Cir. 2014); *Spalluto*, 2008 WL 4525372, at *8 (reducing Fuller's total number of requested hours by 15% to account for excessive time entries located throughout the invoice); *Wise v. Kelly*, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (reducing fee award by 25% because certain entries were too vague to enable the court to assess their reasonableness).

<u>d. Total Attorneys' Fees Award</u>

As discussed in Section II.B.2.a, supra, the Court disallows 14.30 of Plaintiff's 66.20 requested hours for work not filed, resulting in 51.90 remaining hours. When a 15% reduction is applied to 51.90 hours, the total reasonable number of hours is 44.12. Accordingly, at a rate of $400 per hour, Plaintiff is entitled to $17,648 for the work of Fuller and $100 for the work of the paralegal, totaling $17,748 in attorneys' fees.

| Attorney | Hourly Rate | Hours Requested | Hours Disallowed for Work Not Filed | Remaining Hours | Across-the-board % Reduction in Hours | Total Hours Compensated | Total |
|---|---|---|---|---|---|---|---|
| **Fuller** | $400 | 66.2 | 14.3 | 51.9 | 15% | 44.12 | $17, 648 |
| **Paralegal** | $100 | 1.0 | – | | – | – | $100 |
| | | | | | | | $17, 748 |

<u>3. Costs</u>

Plaintiff seeks a total of $4,270 in costs, including a $3,500 expert fee and $770 in litigation expenses. (Fuller Bill 3.) Plaintiff seeks an additional $750 re-inspection fee. (Pl.'s Mem. 17.)

Plaintiff seeks expert fees for 14 hours of work performed at a billing rate of $250 per hour, for a total of $3,500. (Pl.'s Mem., Ex. D (Bill of Expert) ("Mattera Bill") (Dkt. No. 77-4).) In support of the award of expert fees, Plaintiff only submitted Anthony Mattera's ("Mattera") resume and invoice. Mattera billed one hour for "[p]hone conversation and meeting with plaintiff regarding property," four hours for "[o]n-site verification of ADA violations and [t]ravel," two hours for recording and printing photographs depicting violations, two hours for "[c]ollaboration and verification of ADA violations," four hours for "[r]eport preparation and

review," and one hour for "[p]hone conferences with plaintiff's [a]ttorney." (Mattera Bill.) Mattera allegedly "performed the initial field inspection to confirm the validity of the Complaint, and issued an initial report of the violations, and included photographs of the ADA violations and barriers to access." (Pl.'s Mem. 19.) Defendant argues that Plaintiff "should not be entitled to recoup any costs for [the] problematic and inadmissible report," and suggest that he may not even have visited the premises. (Def.'s Mem. 25.)

"It is within the Court's discretion to award a prevailing party under the ADA its litigation expenses, including expert witness fees." *Park Lane Hotel*, 2005 WL 3338555, at *5 (citing 42 U.S.C. §§ 12117(a), 12205); *see also Swartz*, 2018 WL 5629903, at *7 (same); *Hi 57 Hotel*, 2006 WL 196969, at *2 (same). Because "there is very little authority as to what is meant by "a reasonable fee," most courts use their discretion to select an amount deemed reasonable." *Penberg v. HealthBridge Mgmt.*, No. 08-CV-1534, 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011) (citations omitted). "The plaintiff bears the burden of proving its reasonable costs, which a court may reduce if the plaintiff fails to submit adequate supporting documentation." *Swartz*, 2018 WL 5629903, at *7; *see also Spalluto*, 2008 WL 4525372, at *19 (reducing the plaintiff's costs by 25% for lack of supporting documentation). Courts consider the following factors in determining the reasonableness of an expert witness's fees:

> (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the cost of living in the particular geographical area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters."

*Korabik v. Arcelormittal Plate LLC*, 310 F.R.D. 205, 206 (E.D.N.Y 2015) (citations omitted).

Mattera has significant experience as an accessibility inspector and expert witness and has made over 500 expert appearances. (*See* Pl.'s Mem, Ex. E (Resume of Expert) ("Expert Resume") (Dkt. No. 77-5).) Defendant alleges that Mattera's bill is problematic because there is no date for the onsite verification and the invoice does not list "a single date of performance or the names of individuals allegedly consulted." (Def.'s Mem. 24.) The Court agrees with Defendant insofar as Mattera's bill does not contain details about dates or time expenditures, and does not sufficiently describe the type of the work performed. (*See* Mattera Bill.) This lack of detail prevents the Court from checking the experts' billing against the Fuller bill to assess the reasonableness of the experts' hours. The Court therefore imposes a reduction of 15% to account for this vagueness. *See Penberg*, 2011 WL 1100103, at *15 (reducing expert fees by 15% where party asking for fees failed to provide support for the reasonableness of the expert's fees). Accordingly, Plaintiff is entitled to $2,975 in expert's fees. *See Spalluto*, 2008 WL 4525372, at *17 (reducing award of expert fees by 15% in ADA case where undated itemizations prevented the court from cross-checking the experts' billing with the Fuller invoice to assess the reasonableness of the experts' hours); *Hi 57 Hotel, LLC*, 2006 WL 196969, at *4 (reducing award of expert fees in ADA case where expert's invoice provided "no information concerning the dates when her services alleged were performed).

|  | Hourly Rate | Hours Requested | Hours Disallowed | Across-the-board % fee reduction | Total |
|---|---|---|---|---|---|
| **Mattera** | $250 | 14 | – | 15% | $2,975 |

Plaintiff also seeks $770 in litigation expenses. (Fuller Bill 3.) Defendant does not contest these charges. "[A] court in its discretion may award a prevailing party its reasonable costs pursuant to the ADA . . . includ[ing] those reasonable out-of-pocket expenses incurred by

the attorney [] which are normally charged [to] fee-paying clients." *Swartz*, 2018 WL 5629903, at *7 (citation and quotation marks omitted). Fuller billed $400 for "Filing Fees," $200 for "Title Search," $20 for "Deed search thru Westchester County site," $25 for "Accuring Search," and $125 for "Service of Process." (Fuller Bill 3.) The Court finds that these expenses are reasonable in this litigation and awards the full amount for each of these charges. *See Reiter v. Maxi-Aids, Inc.*, No. 14-CV-3712, 2019 WL 1641306, at *7 (E.D.N.Y. Apr. 16, 2019) (awarding costs for, among other things, court reporter and process server fees where costs were listed in a bill); *Swartz*, 2018 WL 5629903, at *7 (awarding $200 for title search, $135 for service or process, and $50 in photocopying costs); *Ross v. Royal Pizza Cafe Corp.*, No. 17-CV-6294, 2018 WL 6313208, at *7 (E.D.N.Y. Aug. 1, 2018) (awarding a $400 filing fee, $124 in service fees, and $27.92 for certified mailings), *adopted by* 2018 WL 6313182 (E.D.N.Y. Dec. 3, 2018); *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15-CV-5737, 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) ("Court filing fees, process servers, printing and photocopying, messenger services, postage, telephone costs, transcripts, travel, transportation, meals, and other [o]ut of pocket litigation costs are generally recoverable if they are necessary to the representation of the client" (citations and quotation marks omitted)).

Plaintiff also requests a $750.00 re-inspection fee is for an inspection to be completed "after the Defendant completes the repairs of the existing barriers to access in September 2019, to confirm that the ADA violations have been corrected." (Pl.'s Mem. 17.) Plaintiff briefly mentions this re-inspection fee in its Memorandum of Law, (*id.*), but does not submit any supporting documents. Courts generally remove re-inspection fees where the requests lack supporting documentation. *See Swartz*, 2018 WL 5629903, at *8 (rejecting a $750 re-inspection fee where Plaintiff failed to provide any supporting documentation for it); *Mid-Manhattan Hotel*,

2014 WL 3767009, at *3 (rejecting a $750 re-inspection fee where there was no basis for assessing against the defendant the costs of monitoring compliance where the monitoring entity has not been identified and the work has not been performed); *Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels, LLC*, 688 F. Supp. 2d 216, 228 (W.D.N.Y. 2010) (rejecting a $750 re-inspection fee that was presented without any documentation or frame of reference); *Park Lane Hotel*, 2005 WL 3338555, at *5 (rejecting a $750 re-inspection fee where there was no way to determine the future costs of monitoring compliance). The Court accordingly rejects the proposed $750 re-inspection fee.

### III. Conclusion

For the foregoing reasons, Plaintiff is granted $21,493 in attorneys' fees, expert's fees, and litigation expenses. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 77.)

| Attorneys' Fees (including paralegal) | $17,748 |
|---|---|
| Expert | $2,975 |
| Costs | $770 |
| | $21,493 |

SO ORDERED.

Dated:     August 30, 2019
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE